Caddo et al. Vizcarra, Flores, Melendez, etc. et al. Judge Lynch, and may it please the Court, could I have two minutes for rebuttal, Your Honor? Yes, you may. Thank you. The portion of the judgment, Your Honor, that sanctioned the payment of a fee by the shippers that have scanning stations at the exit of their yards in the port of San Juan should be reversed. And it should be reversed because the fee that has been collected does not comply with the three prongs of the Evansville test. The Evansville test is, as the Court knows, the test created by the Supreme Court to measure the constitutionality of this fee's charge for the use of facilities in a port that receives interstate commerce. The three prongs have to be met, and the prongs are simple but important. First, the fee has to be paid in exchange of a benefit for the payor of the fee, and the fee has to be reasonable in terms of the benefit received. Second, the fee has to be proportionate to the benefit received by the government who is charging the fee, and the fee cannot discriminate against interstate commerce. The records show that we prove that all three prongs of the test are met. The first one is the benefit for a reasonable fee. The benefit to the payor in this case is nothing. Let me catch you on that, because can't a port say that no ship's coming in here because we fear explosives or contraband or something, no ship comes in here without getting scanned? Well, Your Honor, the use of the port is charged in different instances. But it just seems to me a port can say to these container ships that are out in the harbor, we're not going to let any of them get off any containers unless they're scanned. Yes, but that's a different question of whether you can charge for that scanning to the payor. But then getting to unload is a big benefit. Well, getting to unload, and we pay for Warfridge. But the point is – No, but you have to also be scanned if you're going to be unloaded. No, we are scanned after being unloaded. Scan is a condition of unloading. Yes, but the question is whether the scanning provides a benefit to me. I mean, if I – Doesn't it let you go into the port? Let's put this. Suppose you said you won't be scanned. You couldn't come into that port and unload, could you? Well, there are many ships going in and out without being scanned at all. That's because they're at another terminal or they don't have a container or they're bulk or something. Yes. But if you want to go to the particular terminal that you want to go to and you want to unload containers to perform your basic business, you're obligated to get scanned. But the point is, Your Honor, that the particular fee that is being charged is for scanning, and you have to determine that there is a particular benefit for the scanning that is other than the benefit that I get from using the port because I am paying all the other fees, entry of the port fee, warfare fee, security fee, and I'm leasing the facilities. My competitors, the competitors to the appellants that I represent, right now bring in containers, and simply because there's no scanning station at the end of their facilities, they don't get scanned. And they are not going to pay because it's a ruling of the court that was an appeal, and that's firm and final. So we are now in a position in which certain shippers only get scanned, and certain shippers only are forced to pay the scanning fee. And that is the problem. The problem is that we're being charged for a service that represents nothing for us. Okay. I didn't understand that aspect of your case. You're saying that other containers come in, but because their terminals do not have the scanning towers, they are not charged anything? They are not charged. For a scanning fee. For scanning on account of the judgment below. First, everybody was. Excuse me. That's true. Whether the judgment excusing other people is correct, I believe, is not a question presented on appeal. You're right, Your Honor. Okay. I have some doubts about it, but it's not a question presented to this court. All right. The legislature set up this system. It has now been modified by a court. But don't we look at what the legislature intended? And the legislature intended that there be at least as much scanning as was feasible for containers coming into the port. And there is a perfectly valid public reason for that. Yes, but it's a perfectly valid public reason, Your Honor, that benefits the people of Puerto Rico. It doesn't benefit the payor. Oh, no, it does, because you don't get in here unless the Commonwealth is satisfied you're not going to be a danger. But I'm interested in this contrast between the container companies that don't have to pay anything, even though they have containers, and your company. But I don't think that was the point of your briefing. Well, Your Honor, it is to a degree. I mean, the only benefit that the court found was a reputational benefit that had no basis on the record whatsoever. And the point we're making is that we don't get that reputational benefit or any other benefit from the scanning. All right. Let's assume we disagree with you and there is some benefit, whether you call it reputational or not. You've got other prongs in your argument. Could you add to them? Yes. The other two prongs is, first, the district court determined that this was not a burden on interstate commerce. The only commerce entering the Port of San Juan, and that is still disputed on the record, is interstate commerce. It cannot be said that simply by reading the regulation and saying, well, you know, this I think your better argument may be the proportionality argument. There's no proportionality because this is charged on the basis of the tonnage getting into the Port of San Juan. This is not charged on the basis of the scanning, on the basis of the number of containers, on any basis other than the total tonnage getting into the Port of San Juan. And if that is the case, there's no proportionality, and the district court does not address even the issue. It does say that this benefit that we get is proportional to the fee being charged. Well, but wait, when you say the fee, are you talking about the fee collected by the vendor, or are you talking about the fee you pay, your client pays? We pay, and we have the right to collect it from the client, Your Honor. And that's precisely why there is no reputational benefit, as the court concluded, because those who are not engaging in contraband or trying to sneak in goods without paying the taxes, they have an interest simply in moving their cargo forward. Right, if we assume that the order below will stay in effect, but doesn't allow the court to charge shippers for whom there's no scanning at the facility, then doesn't it follow that all the scanning is going to be done of your clients? Well, I mean, the result of the – I'm not sure that I understand your question, Your Honor, but what you're asking is that as a result of the judgment, all the scanning is going to be done in whoever decides to chip on the lines that have scanning stations, that is correct. And so they will pay 100 percent, not 101 percent, or not 99 percent. They'll pay 100 percent of the cost incurred by the court. Yeah, and one interesting thing, Your Honor, is that the same three stations continue to operate, although bulk cargo and all the other six shippers that have – there's a total of nine entry yards. Three have a scanning station, six do not. All the other six shippers are not paying, and still the same service has been given, which goes to the relationship between the – You've reserved two minutes. Yes, thank you, Your Honor. Good morning again. This time I'm arguing on behalf of the Puerto Rico Ports Authority. Your Honors, we believe that the fact that there's a usage by the plaintiffs in this case and that there's a benefit is not in dispute. We believe that we need not go and threat so fine as to go for reputational benefits because indeed the benefit is having the right to put the merchandise through the port, and in that sense it's no difference. And I believe that an analogy is in order to the fee that is charged by TSA in a plane ticket, even though as Justice Plaintiffs – Except it's not quite. The TSA fee is directly related to security, and when you scan the cargo ships, in fact more of the benefit comes to you in the form of avoidance of tax evasion and not the general purpose of security. And then we have the fact that whatever the legislature intended, you now have a benefit to everybody in Puerto Rico. That's part of what you're saying. But only three of the shippers, as a result of the prior decision, end up paying the cost. Now, it's true that the scanning has come down to only three of the terminals, but everybody gets the benefits and only three of them pay for it. Did the Commonwealth advocate, I mean, before the district court, that it start making these distinctions? Well, Your Honor, as a matter of fact, the distinction only comes after there was a judgment that ruled differently. All the shippers were plaintiffs to this case, and they were challenging the regulation and the law on the same Commerce Plus grounds. It is only after the court found that – You're not answering my question. What was your position? That the law is stronger without these exceptions? Or did you urge these exceptions? Would you answer that question? Well, the exceptions were not urged by the state. All right. Thank you. Also, we believe that absent from this discussion, and very important is the final inquiry of the Evansville test, which goes to the pike analysis. This is not a revenue-generating measure. It is a user fee. It is used to fund a specific activity. Therefore, the plaintiffs have to show a substantial burden on interstate commerce vis-à-vis the local benefit that was being derived from the measure. And in this case, there is no evidence that there was any shortage of products in Puerto Rico, that the business done by the plaintiffs had gone down in any way after this, or that there was any competitive advantage gained from other companies because of the scanning procedure. Therefore, this is pretty much a commerce-plus case that has no discussion on how interstate commerce is implicated. The only discussion that is in the brief is that we believe that interstate commerce is burdened because we have to pay the fee. But in position of a fee, in of itself, it's not enough to argue that there's a burden on interstate commerce, let alone a substantial burden on interstate commerce as required by PIKE. I'm having trouble understanding how this thing works. It seems only three out of nine get scanned. Three out of the nine terminals get scanned. You have the scanning machines at only three of the terminals. So the other six terminals, which don't have the scanning terminal, their containers come through without being scanned. Is that correct? Yes. There's only scanning where... And you don't require the others to have scanning. Well, actually, there's no equipment to perform the scanning. That's right, because you don't require that there be any equipment. So what's the purpose of the scanning? I mean, it seems like you've got a sign out on the port that says, if you want to bring in a bomb or contraband, go to one of those six. If you don't, go here and get scanned. I believe it's a matter of resources for being able to fund machines for all entries. It sort of seems underinclusive for what you're trying to accomplish. Well, the state is working within its financial limitations. No, it isn't. You've imposed the cost of these scanning terminals on particular shippers and not on others. I know Puerto Rico doesn't want to pay for this. That's why they've set up this system. But it's a system that applies differentially. It's not costing your client anything, is it? You're charging the shippers. The charge is used to defray the cost of the scanning company, yes. Yeah, right. So you could make all container shippers have one of these devices. And I believe that is the goal of the law and of the regulation. Oh, I didn't see that anywhere. There is no claim that this is a transition period in a longer-running program. No, I'm not saying a transition period. It's just as far as that is what the program entails, but it's not described per se as a transition period. Okay. Thank you very much. Good morning. May it please the Court, this is Rosa Perez on behalf of the Secretary of Treasury in her personal capacity. The Treasury Department, we must say firstly, is not directly implicated in the implementation of the system or the collection of the user fees. However, we would like to address the fee and specifically point out the fact that these three terminals constitute 80% of the inbound cargo in Puerto Rico, so basically the majority of the containerized cargo that enters the island goes through these three ports alone. The shippers know which ones get searched and which ones don't. You can be 100% certain that your ship won't be scanned if you just make sure you use a certain shipping line using a certain terminal. Yeah, you're up to mischief either through contraband or through terrorist activities. You just avoid these three terminals and you ship on a different line that doesn't have a scanning machine. Right. I also want to point out the fact that this was the kind of thing that the parties entered into this contract with the idea of further implementation in the future. I beg your pardon? So this was done in a way to initiate the scanning system. You point in the record to either a legislative mandate or a regulation that says we're not done, the next container terminal is going to have to install one of these machines. Well, not in those particular. There's nothing in the record, right? Not as you say, Your Honor. Okay. Council, may I ask you a question? Does the record disclose whether the implementation of the scanning at these three facilities has permitted the government to increase the frequency of inspections or intensity of inspections at the other facilities? Yes. The record actually points out that in the years 2011 to 2013, 313,383 containers were inspected manually versus now. Sorry. Sorry. I'm inverting the numbers. Those were the numbers that are currently, containers that are currently inspected versus 7,000 that were only able to be, you know, manually inspected. So we're talking about an exponential effort here being done to really inspect incoming cargo. I'd like to follow up on that. Are you saying because of the scanning machines at the three terminals, you have been able to free up inspectors that otherwise would have inspected at these three terminals to go to the other terminals, the other six, and increase the number and rate of inspections at the other six? Is that what you're saying? These numbers pertain to the terminals that have the scanning stations, not the ones. So my question went to the remaining six, not those three. Does the record disclose that the presence of these scanners at the three terminals allows the government to do its job better at the other terminals? There's not that I remember any particular evidence on that. So there's no evidence one way or the other? I mean, the other thing you could have done is reduce the number of inspectors because it's now done mechanically and not by hand. Do you know what happened? No, Your Honor. That's information on what's on the record. But we would also want to, I think I'm done with the argument, but this is not a flat fee but a scale-based fee. And the majority of the – this is not a revenue raising, but the majority of the money goes into the system to benefit them. Okay. Thank you. May it please the Court, my name is Ike Lugo. It is my privilege to represent the amicus curiae in this case as to Services for Puerto Rico. Your Honors, I prepared an argument today, but I think that it would be helpful to continue the discussion as to how this scanning is supposed to work in the future. My comments are limited from a business perspective because we are the exclusive provider of the services with regards to this project. Our contract, which is referenced in the opinion and order, specifically envisions that the intent is that we will scan 100% of all cargo containers that will come into Puerto Rico. That was the intent. My reading of the record, if I understand it correctly, the injunction filed by Plaintiffs at the beginning sought to stop that, and the injunction was denied. But the plan of the Port Authority, as it pertains to us and how we are engaged with regards to this regulation, is for the scanning of 100%. The fact that 100% of... Of containers or of bulk cargo as well? Originally, everything was supposed to be scanned. However, in light of the recent opinion and order, excluding bulk cargo would have to be 100% of cargo containers. But the plan has always been that, to scan 100% of whatever comes into the Port of San Juan, of all ports in Puerto Rico, I'm sorry, of which the Port of San Juan handles 80% of inbound cargo to the island. As amicus, I believe that, and I respectfully ask the court to try to see this case from a real-life perspective. S2 Services of Puerto Rico is a subsidiary of RapidScan. RapidScan Systems is a world leader in security and scanning services with over 20 years of experience. In fact, the very same x-ray machines in this building that scanned our bags this morning are manufactured by RapidScan. RapidScan offers services in all 50 states to both federal and local authorities and has many... offers a myriad of services with regards to security scanning. None of our projects nationwide have ever been struck down for being... in violation of the Commerce Clause. This is a valid exercise. Thank you, Your Honor. Your Honor, I would like to address certain things that I think are not correct on the record. First, the amount of containers that come through terminals that have no scanning station is 38% to 62%. That's one. Secondly, this is only in one port of Puerto Rico. All the other ports in Puerto Rico are open and no scanning station whatsoever. Third, there are more inspectors needed now than before. No resources from the Department of the Treasury were released. The Department of the Treasury was brought into this because only the Department of the Treasury has the authority to order inspections, and now the inspectors of the Department of the Treasury are tied up in these inspections that are paid from the fee for these inspections, and all I have to do to bring in contraband or bring in tax evading goods is to use any other port in Puerto Rico or use these lines that have no scanning. As to the pike argument, Your Honor, initially we did attack the scanning as scanning, and that is what the pike test would apply to. The Evansville test goes to the fee, and certainly the undisputed testimony of the expert in this case is that the system doesn't work. The system has so many holes that there is no advantage whatsoever to what the government is doing and much less an advantage that is proportionate to the fee that has been collected. So that's the reason why we sustain that this fee fails the three prongs of the Evansville test, Your Honor. Thank you very much. Thank you. The court will stand in recess.